# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

Michael Blas Rivera,
Petitioner
-vs-
Charles L. Ryan, et al.,
Respondents.

CV-15-0586-PHX-DLR (JFM)

**Report & Recommendation
on Petition for Writ of Habeas Corpus**

## I.   MATTER UNDER CONSIDERATION

Petitioner, presently incarcerated in the Arizona State Prison Complex at Buckeye, Arizona, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on April 1, 2015 (Doc. 1).   On September 4, 2015 Respondents filed their Response (Doc. 13).    Petitioner filed a Reply on September 23, 2015 (Doc.  18). Respondents filed a Supplemental Answer on January 19, 2016 (Doc. 24), and Petitioner filed a Supplemental Reply on January 28, 2016 (Doc. 25).

The Petitioner's Petition is now ripe for consideration.   Accordingly, the undersigned makes the following proposed findings of fact, report, and recommendation pursuant to Rule 8(b), Rules Governing Section 2254 Cases, Rule 72(b), Federal Rules of Civil Procedure, 28 U.S.C. § 636(b) and Rule 72.2(a)(2), Local Rules of Civil Procedure.

## II.   RELEVANT FACTUAL & PROCEDURAL BACKGROUND
### A.   FACTUAL BACKGROUND

In disposing of Petitioner's direct appeal, the Arizona Court of Appeals summarized the factual background as follows:

Prior to the events at issue, Rivera was a security guard with

1

Securitas. In March 2006, he was assigned to work as a security guard at Pitney Bowes in Phoenix. His duties included monitoring the employee parking lot and ensuring that the building was secure at the end of the work day. On October 19, 2006, Rivera entered the office of Jack Fisher, his immediate supervisor at Pitney Bowes, and quit. Two weeks later, on November 2, 2006 at approximately 7:30 a.m., Steven P., an employee of Pitney Bowes, was standing outside the Pitney Bowes building talking with the morning security guard. As the two talked, Steven heard a loud explosion and felt a shock. He turned and saw a large man with dark hair that he recognized as Rivera shooting at him and the guard with an assault rifle. Steven was hit in the shoulder and began to run away. As he did so, he was shot again in the leg, causing him to fall. In total, Steven sustained eight gunshot wounds. Meanwhile, the guard, who had been shot in the arm, took cover underneath a truck. While under the truck, the guard observed that the shooter was Rivera and that he was running away carrying the same gun that the guard had previously seen in Rivera's truck.

(Exhibit P, Mem. Dec. 3/31/11 at 2-3.)  (Exhibits to the Answer, Doc. 13, are referenced herein as "Exhibit ___.")

## B.  **PROCEEDINGS AT TRIAL**

On February 23, 2007, Petitioner was indicted (Exhibit A) in Maricopa County Superior Court on eight charges of attempted second degree murder, aggravated assault, and endangerment.  He proceeded to a jury trial, which included evidence of a series of occurrences in the course of Petitioner's employment at the Pitney Bowes building, including: (1) a sudden alteration in Petitioner's demeanor in May and June, 2006, resulting in complaints to Petitioner's supervisor who related Petitioner was having family issues; (2) Petitioner cursing at a delivery truck driver speeding through the parking lot; (3) accusations against Petitioner of "keying" an employee's car, to which Petitioner responded abruptly; and (4) Petitioner abruptly quitting, referencing needing to leave before he hurt someone.  (Exhibit P, Mem. Dec. 3/31/11 at 2-5.)

After Petitioner testified in his own defense with a detailed alibi (exhibit J, R.T> 5/26/09 at 35-50), the prosecution offered testimony by a police officer of an uncounseled custodial interrogation conducted without *Miranda* warnings in which Petitioner did not offer the detailed alibi offered at trial (Exhibit K, R.T. 5/27/09 at 7-11.)

Petitioner was convicted as charged, and was sentenced to 15 years on the first

attempted murder charge, a consecutive term of 18 years on the second attempted murder charge, concurrent with terms of 15 years on the aggravated assault charges, and consecutive (but concurrent with each other) 3 year terms on the endangerment charges, resulting in a cumulative effective sentence of 36 years in prison.  (Exhibit M, Sentence.)

## C.     PROCEEDINGS ON DIRECT APPEAL

Petitioner filed a direct appeal, and filed through counsel an Opening Brief (Exhibit N), presenting a single issue for review: whether the trial court's admission of "other act" evidence (the confrontations at Petitioner's workplace) was a violation of Arizona Rule of Evidence 404(b), and resulted in a violation of Petitioner's rights to a fair and impartial jury under the 4th, 5th, 6th, and 14th Amendments to the United States Constitution, and related state authorities.

The Arizona Court of Appeals rejected the argument that the evidence was improperly admitted, concluding that it was properly introduced for purposes of establishing motive, and that it was not unfairly prejudicial. Accordingly, Petitioner's convictions and sentences were affirmed.  (Exhibit P, Mem. Dec. 3/31/11.)

Petitioner did not seek further review, and on May 18, 2011, the Arizona Court of Appeals issued its Mandate (Exhibit P).

## D.     PROCEEDINGS ON POST-CONVICTION RELIEF
## 1.     First PCR Proceeding

Petitioner commenced his first PCR proceeding on October 15, 2009, during the pendency of his direct appeal, by filing a Notice of Post-Conviction Relief (Exhibit Q). Counsel filed a Motion to Stay (Exhibit R), seeking to stay the proceeding pending resolution of his direct appeal.   The court denied the motion and dismissed the proceeding with leave to refile it upon conclusion of the direct appeal.  (Exhibit S, M.E. 6/4/10.)

(Because no claims were presented or adjudicated in this first PCR proceeding, general references hereinafter to Petitioner's state PCR proceeding are intended to refer

to his second PCR proceeding.)

2.    **Second PCR Proceeding**

Petitioner commenced his second PCR proceeding on April 19, 2011, after the denial of his direct appeal, by filing a Notice of Post-Conviction Relief (Exhibit T). Counsel was appointed, who filed a Notice of Completion (Exhibit U) on September 28, 2011, evidencing an inability to find an issue for review.

Petitioner then filed a Pro Per Petition for Post-Conviction Relief (Exhibit V) arguing: (1) his 4th Amendment rights were violated when officers entered his home without a search warrant, and improperly collected evidence, and counsel failed to investigate the matter; (2) failure by the prosecution/investigators/defense counsel to secure exculpatory evidence; (3) false identifications of Petitioner because eye witnesses testified they never saw the shooter; (4) defense counsel's failure to secure a gun expert; and (5) failure to advise Petitioner of his *Miranda* rights.

Following a response and reply, the PCR court determined that additional information and records were required, appointed new Rule 32 counsel, and directed briefing on the claims of "inadequate trial and/or appellate counsel."  (Exhibit Y, M.E. 3/6/12 at 2.)

Counsel then filed a Report (Exhibit Z) addressing various claims, arguing that the admission of Petitioner's un-*Mirandized* statements without a limiting instruction was error, and requesting the preparation of additional transcripts.

Counsel then filed a Motion to Permit Self-Representation (Exhibit AA), appending a letter from Petitioner terminating counsel.  The PCR court granted the motion, appointing counsel as advisory counsel, setting a deadline for a supplemental "motion," and directing the State to respond to counsel's argument on the instructional error regarding the un-*Mirandized* statements.

Petitioner filed a supplemental *pro per* petition ("Pleadings to the Court in regards to Pro per Post Conviction Relief") (Exhibit CC).  Petitioner (1) raised a claim of perjury

by a prosecution witness; and (2) re-urged the *Miranda* instructional error raised by counsel.

On December 24, 2012, the PCR court dismissed the petition, finding a number of claims precluded by Petitioner's failure to raise them previously, alternatively found some claims to be without merit, and found Petitioner's claims of ineffective assistance of trial and appellate counsel to be without merit.  (Exhibit HH.)

Petitioner then filed a Petition for Review (Exhibit II) with the Arizona Court of Appeals, arguing:  (1) the search of Petitioner's home and car without a warrant (and the keys disposed of) resulting in the violation of his 4th and 5th Amendment rights and counsel failed to investigate the issue; (2) Petitioner was denied a fair trial because evidence was not collected from his apartment, and counsel failed to investigate; (3) false identifications of Petitioner because eye witnesses testified they never saw the shooter, and counsel was ineffective for failing to retain an eye witness expert; (4) counsel was ineffective for failing to retain a gun expert to rebut the prosecutions' expert; (5) his constitutional rights were violated when he was not advised of his *Miranda* rights; (6) error in failing to issue a limiting instruction on the use of Petitioner's un-*Mirandized* statements; (7) the state failed to provide notice of its intent to use prior acts evidence, and that such evidence was unduly prejudicial, resulting in a denial of Petitioner's right to due process and a fair trial under the 5th and 14th Amendments; (8) a non-representative jury in violation of the 4th, 5th, 6th and 14th Amendments; and (9) the sentence was excessive.

The Arizona Court of Appeals granted review, but denied relief, adopting the trial court's reasoning. (Exhibit LL, Mem. Dec. 4/22/14.)

Petitioner then sought review by the Arizona Supreme Court (Exhibit MM), which summarily denied review on October 1, 2014.

E.     **PRESENT FEDERAL HABEAS PROCEEDINGS**

**Petition** - Petitioner commenced the current case by filing his Petition for Writ of

Habeas Corpus pursuant to 28 U.S.C. § 2254 on April 1, 2015 (Doc. 1).  Petitioner's

Petition asserts the following grounds for relief:

> In **Ground One**, he alleges that the State violated his Fourth, Fifth, Sixth and Fourteenth Amendment rights by introducing highly prejudicial and unfair evidence. In **Ground Two**, Petitioner alleges that his Miranda rights were violated. In **Ground Three**, he alleges that his Fourth, Fifth, Sixth, and Fourteenth Amendment rights were violated where police took his keys and conducted illegal searches and tampered with evidence without obtaining a search warrant. In **Ground Four**, Petitioner alleges that his Fifth and Fourteenth Amendment rights were violated where the police failed to recover evidence that would have excluded him as the perpetrator. In **Ground Five**, he alleges that his Fifth and Sixth Amendment rights were violated where the victims never actually saw the perpetrator but nevertheless identified Petitioner as the perpetrator. In **Ground Six**, Petitioner alleges that his Fifth, Sixth, and Fourteenth Amendment rights were violated where jurors talked to the prosecutor outside of court and a State witness was coerced into falsely testifying at his trial. In **Ground Seven**, Petitioner alleges that his sentence violates the Eighth Amendment.

(Service Order 6/8/15, Doc. 7 at 2.)  Petitioner appends to his Petition a "Supplemental

Brief" (Doc. 1 at 82, *et seq.*) addressing the merits of his claims.

**Response** - On September 4, 2015, Respondents filed their Response ("Limited

Answer") (Doc. 13).   Respondents argue that Ground 3 is not cognizable on habeas

review, Petitioner procedurally defaulted his state remedies on Grounds 1, 4, 5, 6, and 7,

and Grounds 2, 3, 4, and 5 were procedurally barred on independent and adequate state

grounds.

**Reply** - On September 23, 2015 Petitioner filed a Reply ("Response to

Respondents' Limited Answer) (Doc. 18).  Petitioner argues that Ground 3 is cognizable,

he fairly presented his claims to the state courts, and failure to properly exhaust should

be excused because he is actually innocent.[1]

**Supplemental Answer** – In an Order filed November 25, 2015 (Doc. 19), the

Court directed Respondents to address the merits of Ground 1 (Prior Bad Acts), and the

---

[1] Petitioner also mounts an argument regarding the application of the non-retroactivity rule of *Teague v. Lane*, 489 U.S. 288 (1989).  (Reply, Doc. 18 at 8.)  The undersigned has discerned no portion of Respondents' Answer dependent upon a non-retroactivity analysis, and thus does not address this issue.

independence and adequacy of the procedural bar applied to Ground 2(b) (Jury Instruction), and the merits of that claim.

In response, on January 19, 2016, Respondents filed their Supplemental Answer (Doc. 24). Respondents argue that Ground 1 is without merit because the evidence was relevant to matters other than propensity, and/or was not unduly prejudicial, any error was harmless (*id.* at 12, *et seq.*), and that Ground 2(b) is without merit because it is vague, and any error was harmless (*id.* at 18, *et seq.*).

### III.   APPLICATION OF LAW TO FACTS

### A.   EXHAUSTION, PROCEDURAL DEFAULT AND PROCEDURAL BAR

Respondents argue that all of Petitioner's claims are either procedurally defaulted and/or were procedurally barred on an independent and adequate state ground, and thus are barred from federal habeas review.

### 1.   Exhaustion Requirement

Generally, a federal court has authority to review a state prisoner's claims only if available state remedies have been exhausted. *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981) (*per curiam*). The exhaustion doctrine, first developed in case law, has been codified at 28 U.S.C. § 2254(b) and (c). When seeking habeas relief, the burden is on the petitioner to show that he has properly exhausted each claim. *Cartwright v. Cupp*, 650 F.2d 1103, 1104 (9th Cir. 1981)(*per curiam*), *cert. denied*, 455 U.S. 1023 (1982).

Ordinarily, to exhaust his state remedies, the petitioner must have fairly presented his federal claims to the state courts. "A petitioner fairly and fully presents a claim to the state court for purposes of satisfying the exhaustion requirement if he presents the claim: (1) to the proper forum, (2) through the proper vehicle, and (3) by providing the proper factual and legal basis for the claim." *Insyxiengmay v. Morgan*, 403 F.3d 657, 668 (9th Cir. 2005).

**Proper Forum** - "In cases not carrying a life sentence or the death penalty,

7

'claims of Arizona state prisoners are exhausted for purposes of federal habeas once the Arizona Court of Appeals has ruled on them.'" *Castillo v. McFadden*, 399 F.3d 993, 998 (9th Cir. 2005)(quoting *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir. 1999)).

**Proper Vehicle** - Ordinarily, "to exhaust one's state court remedies in Arizona, a petitioner must first raise the claim in a direct appeal or collaterally attack his conviction in a petition for post-conviction relief pursuant to Rule 32." *Roettgen v. Copeland*, 33 F.3d 36, 38 (9th Cir. 1994). Only one of these avenues of relief must be exhausted before bringing a habeas petition in federal court. This is true even where alternative avenues of reviewing constitutional issues are still available in state court. *Brown v. Easter*, 68 F.3d 1209, 1211 (9th Cir. 1995); *Turner v. Compoy*, 827 F.2d 526, 528 (9th Cir. 1987), *cert. denied*, 489 U.S. 1059 (1989).

**Factual Basis** – A petitioner must have fairly presented the operative facts of his federal claim to the state courts as part of the same claim. A petitioner may not broaden the scope of a constitutional claim in the federal courts by asserting additional operative facts that have not yet been fairly presented to the state courts. Expanded claims not presented in the highest state court are not considered in a federal habeas petition. *Brown v. Easter*, 68 F.3d 1209 (9th Cir. 1995); *see also, Pappageorge v. Sumner*, 688 F.2d 1294 (9th Cir. 1982), cert. denied, 459 U.S. 1219 (1983). And, while new factual allegations do not ordinarily render a claim unexhausted, a petitioner may not "fundamentally alter the legal claim already considered by the state courts." *Vasquez v. Hillery*, 474 U.S. 254, 260 (1986). *See also Chacon v. Wood*, 36 F.3d 1459, 1468 (9th Cir.1994).

**Legal Basis** - Failure to alert the state court to the constitutional nature of the claim will amount to failure to exhaust state remedies. *Duncan v. Henry*, 513 U.S. 364, 366 (1995). While the petitioner need not recite "book and verse on the federal constitution," *Picard v. Connor,* 404 U.S. 270, 277-78 (1971) (quoting *Daugherty v. Gladden*, 257 F.2d 750, 758 (9th Cir. 1958)), it is not enough that all the facts necessary to support the federal claim were before the state courts or that a "somewhat similar state

law claim was made." *Anderson v. Harless*, 459 U.S. 4, 6 (1982)(*per curiam*). "[T]he petitioner must make the federal basis of the claim explicit either by specifying particular provisions of the federal Constitution or statutes, or by citing to federal case law," *Insyxiengmay v. Morgan*, 403 F.3d 657, 668 (9th Cir. 2005), or by "a citation to a state case analyzing [the] federal constitutional issue." *Peterson v. Lampert*, 319 F.3d 1153, 1158 (9th Cir. 2003). But a drive-by-citation of a state case applying federal and state law is not sufficient.

> For a federal issue to be presented by the citation of a state decision dealing with both state and federal issues relevant to the claim, the citation must be accompanied by some clear indication that the case involves federal issues. Where, as here, the citation to the state case has no signal in the text of the brief that the petitioner raises federal claims or relies on state law cases that resolve federal issues, the federal claim is not fairly presented.

*Casey v. Moore*, 386 F.3d 896, 912 n. 13 (9th Cir. 2004).

**Fair Presentation** - "[O]rdinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." *Baldwin v. Reese*, 541 U.S. 27, 32 (2004). The Arizona habeas petitioner "must have presented his federal, constitutional issue before the Arizona Court of Appeals within the four corners of his appellate briefing." *Castillo v. McFadden*, 399 F.3d 993, 1000 (9th Cir. 2005). *But see Insyxiengmay v. Morgan*, 403 F.3d 657, 668-669 (9th Cir. 2005) (arguments set out in appendix attached to petition and incorporated by reference were fairly presented).

**2.    Procedural Default**

Ordinarily, unexhausted claims are dismissed without prejudice. *Johnson v. Lewis*, 929 F.2d 460, 463 (9th Cir. 1991). However, where a petitioner has failed to properly exhaust his available administrative or judicial remedies, and those remedies are now no longer available because of some procedural bar, the petitioner has "procedurally defaulted" and is generally barred from seeking habeas relief. Dismissal with prejudice

of a procedurally defaulted habeas claim is generally proper absent a "miscarriage of justice" which would excuse the default.  *Reed v. Ross*, 468 U.S. 1, 11 (1984).

Respondents argue that Petitioner may no longer present his unexhausted claims to the state courts.  Respondents rely upon Arizona's preclusion bar, set out in Ariz. R. Crim. Proc. 32.2(a) and time limit bar, set out in Ariz. R. Crim. P.  32.4.  (Answer, Doc. 13 at 14-15.)

**Remedies by Direct Appeal** - Under Ariz.R.Crim.P. 31.3, the time for filing a direct appeal expires twenty days after entry of the judgment and sentence. Moreover, no provision is made for a successive direct appeal.  Accordingly, direct appeal is no longer available for review of Petitioner's unexhausted claims.

**Remedies by Post-Conviction Relief** – Under Arizona's preclusion, waiver and timeliness bars, Petitioner can no longer seek review by a subsequent PCR Petition.

Preclusion Bar – Under the rules applicable to Arizona's post-conviction process, a claim may not be brought in a petition for post-conviction relief if the claim was "[f]inally adjudicated on the merits on appeal or in any previous collateral proceeding." Ariz. R. Crim. P. 32.2(a)(2).

Waiver Bar - Under the rules applicable to Arizona's post-conviction process, a claim may not ordinarily be brought in a petition for post-conviction relief that "has been waived at trial, on appeal, or in any previous collateral proceeding."  Ariz.R.Crim.P. 32.2(a)(3).  Under this rule, some claims may be deemed waived if the State simply shows "that the defendant did not raise the error at trial, on appeal, or in a previous collateral proceeding."  *Stewart v. Smith*, 202 Ariz. 446, 449, 46 P.3d 1067, 1070 (2002) (quoting Ariz.R.Crim.P. 32.2, Comments). *But see State v. Diaz*, 236 Ariz. 361, 340 P.3d 1069 (2014) (failure of PCR counsel, without fault by petitioner, to file timely petition in prior PCR proceedings did not amount to waiver of claims of ineffective assistance of trial counsel).

For others of "sufficient constitutional magnitude," the State "must show that the defendant personally, "knowingly, voluntarily and intelligently' [did] not raise' the

ground or denial of a right." Id.  That requirement is limited to those constitutional rights "that can only be waived by a defendant personally." *State v. Swoopes*, 216 Ariz. 390, 399, 166 P.3d 945, 954 (App.Div. 2, 2007).  Indeed, in coming to its prescription in *Stewart v. Smith*, the Arizona Supreme Court identified: (1) waiver of the right to counsel, (2) waiver of the right to a jury trial, and (3) waiver of the right to a twelve-person jury under the Arizona Constitution, as among those rights which require a personal waiver. 202 Ariz. at 450, 46 P.3d at 1071.  Claims based upon ineffective assistance of counsel are determined by looking at "the nature of the right allegedly affected by counsel's ineffective performance. *Id*.

Here, none of Petitioner's claims are of the sort requiring a personal waiver, and Petitioner's claims of ineffective assistance similarly have at their core the kinds of claims not within the types identified as requiring a personal waiver.

Timeliness Bar - Even if not barred by preclusion, Petitioner would now be barred from raising his claims by Arizona's time bars.  Ariz.R.Crim.P. 32.4 requires that petitions for post-conviction relief (other than those which are "of-right") be filed "within ninety days after the entry of judgment and sentence or within thirty days after the issuance of the order and mandate in the direct appeal, whichever is the later."  *See State v. Pruett*, 185 Ariz. 128, 912 P.2d 1357 (App. 1995) (applying 32.4 to successive petition, and noting that first petition of pleading defendant deemed direct appeal for purposes of the rule).  That time has long since passed.

Exceptions - Rules 32.2 and 32.4(a) do not bar dilatory claims if they fall within the category of claims specified in Ariz.R.Crim.P. 32.1(d) through (h). See Ariz. R. Crim. P. 32.2(b) (exceptions to preclusion bar); Ariz. R. Crim. P. 32.4(a) (exceptions to timeliness bar).  Petitioner has not asserted that any of these exceptions are applicable to his claims.  Nor does it appears that such exceptions would apply.  The rule defines the excepted claims as follows:

> d. The person is being held in custody after the sentence imposed has expired;
> e. Newly discovered material facts probably exist and such

facts probably would have changed the verdict or sentence. Newly discovered material facts exist if:

    (1) The newly discovered material facts were discovered after the trial.

    (2) The defendant exercised due diligence in securing the newly discovered material facts.

    (3) The newly discovered material facts are not merely cumulative or used solely for impeachment, unless the impeachment evidence substantially undermines testimony which was of critical significance at trial such that the evidence probably would have changed the verdict or sentence.

    f. The defendant's failure to file a notice of post-conviction relief of-right or notice of appeal within the prescribed time was without fault on the defendant's part; or

    g. There has been a significant change in the law that if determined to apply to defendant's case would probably overturn the defendant's conviction or sentence; or

    h. The defendant demonstrates by clear and convincing evidence that the facts underlying the claim would be sufficient to establish that no reasonable fact-finder would have found defendant guilty of the underlying offense beyond a reasonable doubt, or that the court would not have imposed the death penalty.

Ariz.R.Crim.P. 32.1.

Paragraph 32.1 (d) (expired sentence) generally has no application to an Arizona prisoner who is simply attacking the validity of his conviction or sentence. Where a claim is based on "newly discovered evidence" that has previously been presented to the state courts, the evidence is no longer "newly discovered" and paragraph (e) has no application. Here, Petitioner has long ago asserted the facts underlying his claims. Paragraph (f) has no application where the petitioner filed a timely notice of post-conviction relief. Paragraph (g) has no application because Petitioner has not asserted a change in the law since his last PCR proceeding. Finally, paragraph (h), concerning claims of actual innocence, has no application to the procedural claims Petitioner asserts in this proceeding.

Therefore, none of the exceptions apply, and Arizona's time and waiver bars would prevent Petitioner from returning to state court. Thus, Petitioner's claims that were not fairly presented are all now procedurally defaulted.

### 3.  Procedural Bar on Independent and Adequate State Grounds

Related to the concept of procedural default is the principle of barring claims

actually disposed of by the state courts on state grounds.  "[A]bsent showings of 'cause' and 'prejudice,' federal habeas relief will be unavailable when (1) 'a state court [has] declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement,' and (2) 'the state judgment rests on independent and adequate state procedural grounds.' " *Walker v. Martin,* 562 U.S. 307, 316 (2011).

In *Bennett v. Mueller*, 322 F.3d 573 (9th Cir.2003), the Ninth Circuit addressed the burden of proving the independence and adequacy of a state procedural bar.

> Once the state has adequately pled the existence of an independent and adequate state procedural ground as an affirmative defense, the burden to place that defense in issue shifts to the petitioner. The petitioner may satisfy this burden by asserting specific factual allegations that demonstrate the inadequacy of the state procedure, including citation to authority demonstrating inconsistent application of the rule. Once having done so, however, the ultimate burden is the state's.

*Id*. at 584-585.

### 4.   **Application to Petitioner's Claims**

#### a)   **Presentation to the Arizona Supreme Court**

Petitioner asserts in his Petition that a variety of his claims were presented to the Arizona Supreme Court in his PCR Petition for Review.  The Arizona Supreme Court did not actually consider any of Petitioner's claims, but simply denied review.  (Exhibit NN, Order 10/1/14.)  Thus, to result in exhaustion, Petitioner must have fairly presented his claims to the Arizona Supreme Court.

However, the presentation of a claim for the first time in a petitioner's petition for review to the Arizona Supreme Court is not sufficient to fairly present the claim to the Arizona courts.  The Arizona Supreme Court generally will not consider issues raised for the first time before it, although it has the discretion to do so. *See Town of South Tucson v. Board of Supv'rs of Pima County*, 52 Ariz. 575, 84 P.2d 581 (1938).  Raising "federal constitutional claims for the first and only time to the state's highest court on discretionary review" is not fair presentation.  *Casey v. Moore*, 386 F.3d 896, 918 (9th

Cir. 2004).

In *Casey*, the court reiterated that to properly exhaust a claim, "a petitioner must properly raise it on every level of direct review."  *Id.* at 916.

> Academic treatment accords: The leading treatise on federal habeas corpus states, "Generally, a petitioner satisfies the exhaustion requirement if he properly pursues a claim (1) throughout the entire direct appellate process of the state, or (2) throughout one entire judicial postconviction process available in the state."

*Id.* (quoting Liebman & Hertz, *Federal Habeas Corpus Practice and Procedure*, § 23.3b (4th ed. 1998) (emphasis added)).

Thus, Petitioner's presentation of a claim for the first time to the Arizona Supreme Court would not result in exhaustion.  Accordingly, the undersigned addresses hereinafter only Petitioner's presentation of his claims to the Arizona Court of Appeals.

### b)    Ground One (Prior Bad Acts)

**Arguments** - In Ground One of his Petition, Petitioner argues that his constitutional rights were violated when Petitioner's unfairly prejudicial prior bad acts (workplace demeanor, "keying" incident, etc.) were introduced to establish Petitioner's guilt. (Petition, Doc. 1 at 6.)  Petitioner "reiterates the points of the brief which was filed in the Arizona Court of Appeals" on his direct appeal.  (Supplemental Brief, Doc. 1 at 3.) He argues he presented this issue on direct appeal.  (Petition, Doc. 1 at 6.)

Respondents argue that a claim based on the same facts was raised on direct appeal, but Petitioner raised it only on state law grounds, and that the passing reference to "The Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution" was not fair presentation of a federal claim.  (Answer, Doc. 13 at 17.) Respondents argue that the claim is now procedurally defaulted.

Petitioner replies generally asserting the fair presentation of his claims, but fails to proffer any argument related to any of his specific claims, and does not point to any particular portion of his briefs in which his claims were fairly presented.

**Record** – On direct appeal, Petitioner argued that the trial court's admission of

"other act" evidence was a violation of Arizona Rule of Evidence 404(b) (prior acts evidence), and 403 (unfair prejudice). (Exhibit N, Opening Brief at 7, *et seq.*) Petitioner argued:

> The Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution and Art. 2, § § 4 and 24 of the Arizona Constitution guarantees defendants the right to a trial by a fair and impartial jury and to the fair determination of guilt or innocence. Appellant was denied his constitutional right to these guarantees because the State was allowed to present evidence that was inadmissible under the plain language of Arizona Rule of Evidence 404 (b).

(Exhibit N, Opening Brief at 8.) Petitioner argued that the result of the admission of the evidence was that he "was denied his right to a fair trial and due process." (*Id.* at 10.)

The Arizona Court of Appeals addressed Petitioner's claims under the state statutes, and then opined: "Similarly, Rivera's claim that his Fourth, Fifth, and Sixth Amendment rights were violated because the admitted testimony violated Rule 404 (b) fails under the same reasoning." (Exhibit P, Mem. Dec. 3/31/11 at 11.)

**Analysis** – Petitioner presented the facts and federal constitutional basis for his claim in his opening brief, albeit with little argument.

Respondents argue that Petitioner's arguments were insufficient because they amounted to nothing more than "general appeals to broad constitutional principles, such as due process, equal protection, and the right to a fair trial," (Answer, Doc. 13 at 17 (quoting *Lyons v. Crawford*, 232 F.3d 666, 669 (9th Cir. 2000)), or "a mere reference to the 'Constitution of the United States,'" (*id.* (citing *Gray v. Netherland*, 518 U.S. 152, 162-163 (1996)).

Here, however, Petitioner did not make a mere reference to the Constitution or general appeals to broad constitutional principles. He laid out a factual background, a legal theory with well-established constitutional dimensions (unfairly prejudicial evidence) and cited to specific provisions of the Constitution. *See e.g. McKinney v. Rees*, 993 F.2d 1378, 1380 (9th Cir. 1993), as amended (June 10, 1993) (acknowledging Supreme Court's previous avoidance of the issue, but deciding unfairly prejudicial

evidence denied due process); *Jammal v. Van de Kamp*, 926 F.2d 918, 920 (9th Cir. 1991) (discussing due process limits on unfairly prejudicial evidence).

In contrast, in *Lyons* upon which Respondents rely, the Petitioner "referred neither to provisions of federal law nor to the decisions of federal courts" and merely made "general reference in his state habeas petition to insufficiency of evidence, his 'right to be tried by an impartial jury,' 'ineffective assistance of counsel' and being 'shammed' into waiving a preliminary hearing." *Lyons*, 232 F.3d at 669-70, *as amended and superseded*, 247 F.3d 904 (9th Cir. 2001). In contrast, the Ninth Circuit noted that one claim had been deemed exhausted because he had identified one claim "as 'violating the 6th Amendment[ ] and den[ying] the defendant due process'. "*Id.* at 670. *See also Casey v. Mmore*, 386 F.3d 896, 913 (9th Cir. 2004) (no fair presentation from reference to "fair trial" or "right to present a defense" with no reference to "specific federal constitutional violation").

Moreover, the Arizona Court of Appeals explicitly addressed Petitioner's federal claim, albeit tersely, and rejected it on the merits. A state court's actual consideration of a claim satisfies exhaustion. *See Sandstrom v. Butterworth*, 738 F.2d 1200, 1206 (11th Cir.1984) ("[t]here is no better evidence of exhaustion than a state court's actual consideration of the relevant constitutional issue"); *see also Walton v. Caspari*, 916 F.2d 1352, 1356-57 (8th Cir.1990) (state court's sua sponte consideration of an issue satisfies exhaustion).

Accordingly, the undersigned concludes that Petitioner's claim in Ground 1 was fairly presented to the Arizona Court of Appeals, and thus his state remedies on this claim have been properly exhausted.

c)      **Ground Two (*Miranda* and Jury Instruction)**

**Arguments** - In Ground 2 of his Petition, Petitioner argues that he was never advised of his *Miranda* rights, the jury relied upon a video of his interrogation, and no limiting jury instruction was given, resulting in the denial of his rights under the 5th, 6th,

and 14th Amendments.  (Petition, Doc. 1 at 7.)   This claim functionally consists of two parts: (a) the absence of *Miranda* warnings; and (b) the lack of a limiting instruction on the use the un-*Mirandized* statements.  Petitioner asserts these claims were raised in his PCR proceedings.  (*Id.*)

Respondents argue that the entirety of Ground Two was presented in his PCR proceeding, but was barred on the basis of Arizona's waiver bar, and thus is barred from federal habeas review.  (Answer, Doc. 13 at 19.)

Petitioner does not counter that argument, but instead argues his actual innocence. (Reply, Doc. 18 at 5.)

**State Court Record** – The only claim raised by Petitioner on direct appeal was his prior bad acts claim in Ground 1.  Accordingly, hereinafter, the undersigned focuses solely on Petitioner's PCR proceedings to identify exhaustion.

Petitioner's counsel raised his Ground 2(a) (*Miranda* warnings) in Issue Five in his original *Pro Per* PCR Petition (Exhibit V).  Petitioner's counsel raised Ground 2(b) (instructional error) in the Successor PCR Counsel's Report (Exhibit Z), and Petitioner again argued it in his supplemental PCR petition (Exhibit CC at 2, *et seq.*).

The PCR court held Ground 2(a), Petitioner's claims based on the failure to advise him of his *Miranda* rights, precluded for failure to raise it at trial or on direct appeal.  (Exhibit HH, M.E. 12/24/12 at 2.) The PCR court separately addressed the related instructional error claim, Ground 2(b), by noting no instruction had been requested at trial, and thus review was limited to "fundamental error analysis."  (*Id.* at 2-3.)

Petitioner raised these claims in issue five in his Petition for Review.  (Exhibit II at 6.)  The Arizona Court of Appeals, although granting review, "adopt[ed] the trial court's ruling" without further discussion of the claim.  (Exhibit LL, Mem. Dec. 4/22/14 at ¶ 4.)  Accordingly, this Court evaluates this claim on the basis of the decision of the PCR court, the "last reasoned decision." *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004).

**Analysis** – The portion of Petitioner's claim based solely on the failure to advise him of his *Miranda* rights was procedurally barred on the basis of Arizona's Rule 32.2 waiver bar.  Petitioner proffers nothing to suggest that this rule is not an independent and adequate state ground sufficient to bar federal habeas review.  Accordingly, absent cause or prejudice, or actual innocence, review of this claim is barred.

The portion of Petitioner's claim based on the failure to properly instruct was not procedurally barred under Rule 32.2.  Instead, the PCR court observed that the instruction had not been raised at trial, and opined that the claim was "judged solely under a fundamental error analysis.  (Exhibit HH, M.E. 12/24/12 at 2.)  Rule 32.2 contains no exceptions for fundamental error.  It is plain that instead, the PCR court was applying Arizona Rule of Criminal Procedure 21.3(c), which provides:

> No party may assign as error on appeal the court's giving or failing to give any instruction or portion thereof or to the submission or the failure to submit a form of verdict unless the party objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which the party objects and the grounds of his or her objection.

Despite this apparently absolute bar, the Arizona courts have adopted an exception where the error amounts to fundamental error.  *See State v. Whittle*, 156 Ariz. 405, 407, 752 P.2d 494, 496 (1988).

In their Answer, Respondents had not argued that Rule 21.3 is an independent and adequate state ground sufficient to bar federal habeas review.  Further, it appeared that the application of the rule may be intertwined with a consideration of the merits of the claim because of the exception for fundamental error, and thus would not be independent and therefore would not bar habeas review.  Accordingly, Respondents were given an opportunity to supplement their response and the record to address the issue (as well as the merits of the claim).  (Order 11/25/15, Doc. 19.)  In their Supplemental Answer, Respondents proffer no argument that Rule 21.3 is an independent and adequate state bar, and instead address only the merits of the claim.

By failing to respond to the Court's direction for argument on this issue,

Respondents have waived their argument that Ground 2(b) was procedurally barred on an independent and adequate state ground.  Accordingly, the undersigned must conclude that it was properly exhausted, and will proceed to address it on the merits.

**Summary regarding Ground Two** – Ground 2(a) (*Miranda* rights) was procedurally barred on an independent and adequate state ground.  Ground 2(b) (no limiting instruction) was presented to the Arizona Court of Appeals, but Respondents have waived their argument that it was procedurally barred on an independent and adequate state ground.

### d)    Ground Three (Illegal Search)

**Arguments** – In his Ground 3, Petitioner argues that police officers removed his car and apartment keys from his pocket, entered the car and apartment without a warrant and without his permission, and removed and contaminated evidence, and then left the keys under the apartment stairs.  (Petition, Doc. 1 at 8.)   Petitioner asserts this claim was raised in his PCR proceeding.  (*Id.*)

Respondents argue that, like Ground 2(a), this claim was raised in Petitioner's PCR proceeding, but was precluded from review under Arizona's waiver bar.

**State Court Record** – Ground Three was raised by Petitioner in Issue #1 of his original *pro per* PCR petition (Exhibit V).  The PCR court dismissed the claim as waived by failure to raise it previously.  (Exhibit HH, M.E. 12/24/12.)

Petitioner again raised this claim in his Petition for Review. (Exhibit II at "1".)

**Analysis** - Like Ground 2(a) (*Miranda*) this claim was procedurally barred on an independent and adequate state ground.

### e)    Ground Four (Exculpatory Evidence)

**Arguments** – In his Ground 4, Petitioner argues that the failure of the police to gather and preserve exculpatory evidence from his apartment violated his 5th and 14th Amendment rights.  (Petition, Doc. 1 at 9.)  Petitioner asserts this claim was raised in his

PCR proceeding.  (*Id.*)

Respondents argue that while Petitioner raised the facts underlying this claims in his PCR proceedings, he failed to raise them as federal claims, thus did not fairly present the claim, and has now procedurally defaulted his state remedies. (Answer, Doc. 13 at 21.)

**State Record**- In his PCR Petition for Review, Petitioner argued that he failure to gather and preserve evidence from his apartment, resulting in a denial of "a fair trial." (Exhibit II, at 3.)  Petitioner did not cite any federal cases or constitutional provisions in support of this claim.  (*Id.* at 3-4.)

**Analysis** – Petitioner was obligated to fairly present this claim to the Arizona Court of Appeals.  "[T]he petitioner must make the federal basis of the claim explicit either by specifying particular provisions of the federal Constitution or statutes, or by citing to federal case law," *Insyxiengmay*, 403 F.3d at 668, or by "a citation to a state case analyzing [the] federal constitutional issue." *Peterson*, 319 F.3d at 1158. Petitioner did neither, and thus failed to fairly present his claim in Ground 4.  For the reasons discussed hereinabove, that claim is now procedurally defaulted.


**f)   Ground Five (Unreliable Identifications)**

**Arguments** – In his Ground 5, Petitioner argues that his 5th, 6th, and 14th Amendment rights under *Neil v. Biggers*, 409 U.S. 1811 (1972) were violated because the victims never saw the shooter, and yet identified Petitioner.  (Petition, Doc. 1 at 12.) Petitioner asserts this claim was presented to the state appellate courts in his PCR proceedings.  (*Id.*)

Respondents argue that while Petitioner raised the facts underlying this claims in his PCR proceedings, he failed to raise them as federal claims, thus did not fairly present the claim, and has now procedurally defaulted his state remedies.  (Answer, Doc. 13 at 21.)

**State Record**- In Issue #3 in his PCR Petition for Review, Petitioner argued that

the victims testified they had not seen the shooter and yet identified him a trial.  (Exhibit II, at 4, *et seq.*)  But, Petitioner did not cite any federal cases or constitutional provisions in support of this claim.  (*Id.* at 3-4.)

**Analysis** – Petitioner was obligated to fairly present this claim to the Arizona Court of Appeals by explicitly asserting the federal basis of his claim.   *Insyxiengmay*, 403 F.3d at 668; *Peterson*, 319 F.3d at 1158. Petitioner did not do so, and thus failed to fairly present his claim in Ground 5.  For the reasons discussed hereinabove, that claim is now procedurally defaulted.

### g)   Ground Six (Juror Misconduct/Prosecutorial Misconduct)

**Arguments** – In his Ground 6, Petitioner argues that: (a) jurors talked to the prosecutor outside the courtroom, and (b) a prosecution witness was coerced to testify falsely, in violation of Petitioner's 5th, 6th, and 14th Amendment rights.  (Petition, Doc. 1 at 13.)  Petitioner asserts this claim was raised to the Arizona Court of Appeals in his PCR proceedings.  (*Id.*)

Respondents argue that Ground 6(a) (juror misconduct) was not presented to the state courts.  (Answer, Doc. 13 at 26.)  Respondents argue that the facts of 6(b) were presented in Petitioner's PCR proceeding, but he did not raise them as a federal claim. (Answer, Doc. 13 at 21.)

**State Record** – Petitioner argued in his first supplemental PCR petition (Exhibit CC) that his mother had observed the conversation between the witness and the prosecutor.  He then submitted his Supplement to PCR (Exhibit GG), a statement from this mother regarding the discussions among the jurors.

However, Petitioner did not argue in his PCR Petition for Review to the Arizona Court of Appeals either of the claims in Ground 6.  At best, Petitioner appended a statement from his mother that the prosecutor had been observed directing a witness to read some documents, even though the witness protested he had seen nothing, and that three jurors were observed discussing their intended verdicts.  (Exhibit II, Pet. Rev. at

1    Attachment.)

2        **Analysis** – Petitioner was required to fairly present his claims in Ground 6 to the

3    Arizona Court of Appeals.  His bare presentation of the facts in his mother's statement,

4    devoid of reference to federal law, was not fair presentation of the federal claims now

5    raised.    Accordingly,  for  the  reasons  discussed  hereinabove,  these  claims  are

6    procedurally defaulted.

7

8        **h)    Ground Seven (Excessive Sentence)**

9        **Arguments** – In his Ground 7, Petitioner argues that his sentence was excessive,

10   in violation of the Eighth Amendment.  (Petition, Doc. 1 at 17.)   Petitioner asserts this

11   claim was presented to the Arizona appellate courts in his PCR proceedings.  (*Id.*)

12       Respondents  argue  that  this  claim  was  never  presented  to  the  state  courts.

13   (Answer, Doc. 13 at 26.)

14       **State Court Record** – In his PCR Petition for Review, Petitioner argued for the

15   first time that he was given "an excessive amount of time."  Petitioner cited no federal

16   authority or constitutional provisions in support of that argument.  (Exhibit II at 9.)

17       **Analysis** - Presentation to the Arizona Court of Appeals for the first time is not

18   sufficient to exhaust an Arizona state prisoner's remedies.   "Submitting a new claim to

19   the state's highest court in a procedural context in which its merits will not be considered

20   absent  special  circumstances  does  not  constitute  fair  presentation."    *Roettgen v.*

21   *Copeland*, 33 F.3d 36, 38 (9th Cir. 1994) (citing *Castille v. Peoples*, 489 U.S. 346, 351

22   (1989)).  In Arizona, review of a petition for post-conviction relief by the Arizona Court

23   of Appeals is governed by Rule 32.9, Arizona Rules of Criminal Procedure, which

24   clarifies that review is available for "issues which were decided by the trial court."  Ariz.

25   R. Crim. P.  32.9(c)(1)(ii).  *See also State v. Ramirez*, 126 Ariz. 464, 468, 616 P.2d 924,

26   928 (Ariz.App., 1980) (issues first presented in petition for review and not presented to

27   trial court not subject to review).

28       Moreover, Petitioner failed to provide the federal legal basis for his claim.

Accordingly, Petitioner's Eighth Amendment claim has never been fairly presented to the Arizona Court of Appeals, and for the reasons given hereinabove, his state remedies are now procedurally defaulted.

### i)   Summary Re Exhaustion

Based upon the foregoing, the undersigned concludes that Petitioner properly exhausted his remedies as to: (1) Ground 1 (unfairly prejudicial evidence); and (2) Ground 2(b) (no limiting instruction).

Also based on the foregoing, the undersigned concludes that Petitioner has procedurally defaulted on: (1) Ground 4 (exculpatory evidence); (2) Ground 5 (unreliable identification); (3) Ground 6 (juror misconduct/prosecutorial misconduct); and (4) Ground 7 (excessive sentence).

Finally, based on the foregoing, the undersigned concludes that Petitioner was procedurally barred on independent and adequate state grounds from asserting Ground 2(a) (*Miranda* warning) and Ground 3 (Illegal Search).

## 5.   Cause and Prejudice

If the habeas petitioner has procedurally defaulted on a claim, or it has been procedurally barred on independent and adequate state grounds, he may not obtain federal habeas review of that claim absent a showing of "cause and prejudice" sufficient to excuse the default. *Reed v. Ross*, 468 U.S. 1, 11 (1984).

"Cause" is the legitimate excuse for the default. *Thomas v. Lewis*, 945 F.2d 1119, 1123 (1991). "Because of the wide variety of contexts in which a procedural default can occur, the Supreme Court 'has not given the term "cause" precise content.'" *Harmon v. Barton*, 894 F.2d 1268, 1274 (11th Cir. 1990) (quoting Reed, 468 U.S. at 13), *cert. denied*, 498 U.S. 832 (1990). The Supreme Court has suggested, however, that cause should ordinarily turn on some objective factor external to petitioner, for instance:

> ... a showing that the factual or legal basis for a claim was not

reasonably available to counsel, or that "some interference by officials", made compliance impracticable, would constitute cause under this standard.

*Murray v. Carrier*, 477 U.S. 478, 488 (1986) (citations omitted).

Petitioner offers no cause to excuse his procedural default.  At most, he argues that there is prejudice because his claims have merit.  (Reply, Doc. 18 at 7.)

Although both "cause" and "prejudice" must be shown to excuse a procedural default, although a court need not examine the existence of prejudice if the petitioner fails to establish cause. *Engle v. Isaac*, 456 U.S. 107, 134 n. 43 (1982); *Thomas v. Lewis*, 945 F.2d 1119, 1123 n. 10 (9th Cir.1991).  Petitioner has filed to establish cause for his procedural default.  Accordingly, this Court need not examine the merits of Petitioner's claims or the purported "prejudice" to find an absence of "cause and prejudice."

6.   **Actual Innocence**

The standard for "cause and prejudice" is one of discretion intended to be flexible and yielding to exceptional circumstances, to avoid a "miscarriage of justice."  *Hughes v. Idaho State Board of Corrections*, 800 F.2d 905, 909 (9th Cir. 1986).  Accordingly, failure to establish cause may be excused "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986) (emphasis added).  A petitioner asserting his actual innocence of the underlying crime must show "it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence" presented in his habeas petition.  *Schlup v. Delo*, 513 U.S. 298, 327 (1995).  A showing that a reasonable doubt exists in the light of the new evidence is not sufficient.  Rather, the petitioner must show that no reasonable juror would have found the defendant guilty.  *Id.* at 329.  This standard is referred to as the "*Schlup* gateway."  *Gandarela v. Johnson*, 286 F.3d 1080, 1086 (9th Cir. 2002).

Here, Petitioner asserts that barring his claims will result in a miscarriage of justice because his claims have merit and show that his conviction was legally void.

(Reply, Doc. 18 at 5-6.)

Although not explicitly limited to actual innocence claims, the Supreme Court has not yet recognized a "miscarriage of justice" exception to exhaustion outside of actual innocence. *See* Hertz & Lieberman, *Federal Habeas Corpus Pract. & Proc.* §26.4 at 1229, n. 6 (4th ed. 2002 Cumm. Supp.).  The Ninth Circuit has expressly limited it to claims of actual innocence. *Johnson v. Knowles*, 541 F.3d 933, 937 (9th Cir. 2008).

Moreover, the inadmissibility of evidence that underlies the substance of most of Petitioner's claims is irrelevant to the actual innocence determination.

> [T]he prisoner must "show a fair probability that, in the light of all the evidence, including that alleged to have been illegally admitted (but with due regard to any unreliability of it) and evidence tenably claimed to have been wrongly excluded or to have become available only after the trial, the trier of the facts would have entertained a reasonable doubt of his guilt."

*Kuhlmann v. Wilson*, 477 U.S. 455, n. 17 (1986) (quoting Friendly, *Is Innocence Irrelevant? Collateral Attack on Criminal Judgments*, 38 U.Chi.L.Rev. 142, 160 (1970)).

Further, Petitioner proffers no *new* evidence which would show that no reasonable juror would have found him guilty.

Accordingly his procedurally defaulted and procedurally barred claims must be dismissed with prejudice.

**7.    Conclusion regarding Exhaustion**

Based on the foregoing, all but Ground 1 (unfairly prejudicial evidence) and Ground 2(b) (no limiting instruction) are procedurally defaulted or were procedurally barred on independent and adequate state grounds, and must be dismissed with prejudice.

**B.    MERITS OF GROUND 1 (UNFAIRLY PREJUDICIAL EVIDENCE)**

**1.    Parties Arguments**

In Ground One of his Petition, Petitioner argues that his constitutional rights were violated when unfairly prejudicial evidence of Petitioner's prior bad acts (workplace

demeanor, "keying" incident, etc.) were introduced to establish Petitioner's guilt. (Petition, Doc. 1 at 6.)  Respondents argue that the evidence was properly admissible under state law to show motive was not unfairly prejudicial, any error was harmless, and the state courts' rejection of the claim was not contrary to nor an unreasonable application of federal law.  (Supp. Ans., Doc. 24 at 12, *et seq.*)  Respondents further argue that any error was harmless because of the overwhelming evidence against Petition.  Petitioner replies that other evidence would refute the inferences of motive, intent, etc. and that the evidence of guilt was not so overwhelming as to make the error harmless.  (Supp. Reply, Doc. 25 at 5, *et seq.*)

**2.   <u>Standard Applicable on Habeas</u>**

While the purpose of a federal habeas proceeding is to search for violations of federal law, in the context of a prisoner "in custody pursuant to the judgment a State court," 28 U.S.C. § 2254(d) and (e), not every error justifies relief.

**Errors of Law** - "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [the law] incorrectly." *Woodford v. Visciotti*, 537 U. S. 19, 24– 25 (2002) (per curiam).  To justify habeas relief, a state court's decision must be "contrary to, or an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" before relief may be granted.  28 U.S.C. §2254(d)(1).

**Errors of Fact** -  Federal courts are further authorized to grant habeas relief in cases where the state-court decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).  "Or, to put it conversely, a federal court may not second-guess a state court's fact-finding process unless, after review of the state-court record, it determines that the state court was not merely wrong, but actually unreasonable."  *Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir. 2004).

Moreover, a state prisoner is not free to attempt to retry his case in the federal

courts by presenting new evidence.   There is a well-established presumption of correctness of state court findings of fact.   This presumption has been codified at 28 U.S.C. § 2254(e)(1), which states that "a determination of a factual issue made by a State court shall be presumed to be correct" and the petitioner has the burden of proof to rebut the presumption by "clear and convincing evidence."

**Applicable Decisions** – In evaluating state court decisions, the federal habeas court looks through summary opinions to the last reasoned decision.   *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004).

**No Decision on the Merits** – The limitations of 28 U.S.C. § 2254(d) only apply where a claim has been "adjudicated on the merits in State court."   Thus, where a petitioner has raised a federal claim to the state courts, but they have not addressed it on its merits, then the federal habeas court must address the claim *de novo*, and the restrictive standards of review in § 2254(d) do not apply.   *Johnson v. Williams*, 133 S.Ct. 1088, 1091-92 (2013).   *See id.* (adopting a rebuttable presumption that a federal claim rejected by a state court without being expressly addressed was adjudicated on the merits).

**3.** <u>**State Court Decision**</u>

Petitioner presented his claim in Ground 1 on direct appeal.   The Arizona Court of Appeals summarized the pertinent evidence at trial as follows:

> The admitted testimony detailed four events involving Rivera. The first event involved Rivera's change of attitude at work and the subsequent confrontation regarding the change.   Fisher testified that in May .and June of 2006, Rivera's attitude at work had shifted "dramatically." He stated that although Rivera had previously been "very polite" and "very professional," in May and June Rivera had done "a direct about face." Fisher described the "about face," by stating, "No more waving hello, no more waving goodbye, no more coming up to me and having just chit-chat conversation. More of a straight face, avoiding eye contact with other employees, myself." Fisher confronted Rivera about his attitude and told him that the employees at Pitney Bowes were "getting antsy and nervous"" and that Rivera was scaring them. Rivera assumed a "military rest position with his arms behind his back looking straight out" and said that it was not his responsibility

27

to socialize with the employees. Rivera then began "rattling off like a soldier what his duties were and responsibilities were." Fisher contacted Rivera's supervisor at Securitas and later received a message stating that Rivera was having family issues but that the problem had been resolved. Fisher testified that when he later saw Rivera, "everything was back to normal."

The second event was another confrontation between Fisher and Rivera. Fisher had asked Rivera about an incident involving a delivery truck driver speeding through the parking. Rivera related to Fisher the details of the incident and then said, with his head down, "I cursed at him." Fisher testified. that he was surprised by Rivera's reaction to his inquiry because he had intended to simply ask Rivera about the incident, but Rivera reacted like he was being reprimanded. The conversation concluded with Fisher telling Rivera that "he [could not] do that and that he was supposed to bring these things directly to [Fisher]."

The third event occurred in October, approximately one week prior to Rivera quitting. One of the victims, Steven P., testified that in September he noticed that his car had been "keyed." When he questioned Rivera about: it, Rivera appeared indifferent and responded with mostly one word answers.  Steven later sent an email to Fisher stating that he "wouldn't put it past [Rivera] to have keyed the car.  Fisher testified that when he asked Rivera about the incident, Rivera "went back to the almost military protocol," and said "file a report, I told him to file a report, he needs to file a report. I don't know what happened, he just needs to file a report."

The fourth event occurred when Rivera quit on October 19, 2006.  Fisher testified that while he was on the phone, Rivera entered his office and threw his phone, keys, and  clipboard on the desk. Rivera was visibly upset, and said, "[T]hese people, I have to get out of here before I hurt somebody." Rivera left Fisher's office before Fisher could get off the phone and talk to him.

(Exhibit P, Mem. Dec. 3/31/11 at 3-5.)   Petitioner proffers nothing to suggest that this was not a correct recitation of the objected to evidence.

The state court addressed Petitioner's claims under the state evidentiary statutes, and concluded that the evidence was properly admissible under Rule 404(a) as relevant to establishing guilt through motive rather than solely for establishing propensity, and thus was not unfairly prejudicial under Rule 404(b), and then opined: "Similarly, Rivera's claim that his Fourth, Fifth, and Sixth Amendment rights were violated because the admitted testimony violated Rule 404(b) fails under the same reasoning." (Exhibit P, Mem. Dec. 3/31/11 at 11.)

### 4.   **Unfairly Prejudicial Evidence**

Petitioner complained to the state courts that the evidence was admitted in

violation of the state rules of evidence.  A state prisoner is entitled to habeas relief under 28 U.S.C. § 2254 only if he is held in custody in violation of the Constitution, laws or treaties of the United States.  Federal habeas relief is not available for alleged errors in the interpretation or application of state law.  *Estelle v. McGuire*, 502 U.S. 62 (1991). *See Reiger v. Christensen*, 789 F.2d 1425, 1430 (9th Cir. 1986) (dispositive issue is not whether introduction of the evidence violated state law evidentiary principles, but whether the trial court committed an error which rendered the trial so arbitrary and fundamentally unfair that it violated federal due process).   Thus, if Petitioner is to be entitled to relief, he must show that the admission of the evidence resulted in a constitutional violation.

Unfairly prejudicial evidence can amount to a denial of due process.  In the course of addressing the latitude of the states to permit victim impact evidence at a capital sentencing hearing, the Supreme Court has opined:

> In the event that evidence is introduced that is so unduly prejudicial that it renders the trial fundamentally unfair, the Due Process Clause of the Fourteenth Amendment provides a mechanism for relief. See *Darden v. Wainwright*, 477 U.S. 168, 179–183, 106 S.Ct. 2464, 2470–2472, 91 L.Ed.2d 144 (1986).

*Payne v. Tennessee*, 501 U.S. 808, 825 (1991).  The cited opinion in *Darden* involved prosecutorial misconduct in the nature of inappropriate argument in closing, and observed that the relevant question was "whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process'" and that the appropriate standard was "'the narrow one of due process, and not the broad exercise of supervisory power.'"  *Darden*, 477 U.S. at 181 (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 642 (1974).  *See Kansas v. Carr*, 136 S. Ct. 633, 644 (2016) (citing *Payne* for the proposition that the Due Process Clause prohibits the introduction of unduly prejudicial evidence that would render the trial fundamentally unfair); *Alberni v. McDaniel*, 458 F.3d 860, 864 (9th Cir. 2006) ("The Supreme Court has established a general principle that evidence that 'is so extremely unfair that its admission violates fundamental conceptions of justice' may violate due process.").

It is axiomatic that evidence is not a violation of due process merely because it is prejudicial.  "[A]ny evidence that tends to show guilt admitted against a defendant charged with crime may cause prejudice because the relevant evidence of guilt increases the likelihood of a conviction."  *United States v. Ramos-Atondo*, 732 F.3d 1113, 1124 (9th Cir. 2013).  It is only when evidence is unfairly prejudicial, *i.e.* because it is relevant only because of an impermissible inference, that due process concerns arise.  In *Jammal v. Van de Kamp*, 926 F.2d 918 (9th Cir. 1991), the Ninth Circuit summarized the standard regarding evidence with both permissible and impermissible inferences:

> Evidence introduced by the prosecution will often raise more than one inference, some permissible, some not; we must rely on the jury to sort them out in light of the court's instructions. Only if there are no permissible inferences the jury may draw from the evidence can its admission violate due process. Even then, the evidence must "be of such quality as necessarily prevents a fair trial."

*Id.* at 920.

Petitioner does not make clear the impermissible inference he applies to the disputed evidence.  Before the Arizona Court of Appeals, Petitioner's counsel argued that the evidence was impermissible because it was used to establish guilt by showing prior bad acts, or a propensity for violence. (*See*   Exhibit N, Opening Brief at 9.) However, the Ninth Circuit has opined that there is no clearly established Supreme Court law on either prior bad act evidence, *see Garceau v. Woodford*, 275 F.3d 769 (9th Cir.2001), *rev'd on other grounds*, 538 U.S. 202 (2003), or propensity evidence, *see Alberni v. McDaniel*, 458 F.3d 860 (9th Cir. 2006), because the Supreme Court has expressly declined to rule on both of these assertions.    In *Albernini*, the Ninth Circuit rejected arguments that a habeas court could ignore those reservations by the Supreme Court and instead rely upon the general principle that unfairly prejudicial evidence results in a denial of due process.

### 5.   **Application of Law to Facts**

Petitioner complains that the prosecution introduced evidence of the various

workplace events which did not establish motive or intent, but did improperly infer his guilt.  (Petition, Doc. 1 at 6; Supp. Reply, Doc. 25 at 3-4.)   He argues that the first incident (his response when confronted about the change in his demeanor), did not show motive or intent because he was not reprimanded, the issue was between him and his employer (not the manager at the client's site), and his demeanor was the result of a family matter.  (Supp. Reply, Doc. 25 at 5.)  He argues the second incident involving the speeding truck did not show motive or intent because he was obligated to report the matter.  (*Id.*)   He argues the third incident involving the keying of the car simply involved the reporting of the keying and his indication to the employee that a police report should be made.  (*Id.* at 5-6.)  Finally, he argues that fourth incident, upon his resignation, was just that, a resignation with no further contact.  (*Id.* at 6.)  Petitioner argues that the prosecution tried to paint him as an aggressive, angry employee, when he was not.  (*Id.*)

Petitioner fails to offer anything to show that the evidence was not relevant to motive or intent.  At best, Petitioner argues alternative explanations for the events.  But relevance does not turn upon the sufficiency of evidence in establishing the material fact, but upon it making the existence of the fact more or less likely.  *See e.g.* Ariz. R. Evid. 401 ("Evidence is relevant if…it has any tendency to make a fact more or less probable than it would be without the evidence"); Fed. R. Evid. 401 (same).  "Evidence need not be conclusive of a material issue in order to be admitted."  *United States v. Madera*, 574 F.2d 1320, 1322 (5th Cir. 1978).

Despite Petitioner's proffers of favorable inferences, the negative inferences relied upon by the state court were not unsupported or unreasonable.  The first incident raised a reasonable inference of a diminution of Petitioner's workplace demeanor, and his abrupt response.  The second incident raised a reasonable inference of Petitioner's volatility and defensiveness.   The third incident raised a reasonable inference of Petitioner's defensive and abrupt demeanor in the workplace, resulting in a sense of fear of Petitioner by employees.  The fourth incident raised a reasonable inference that

31

Petitioner was disgruntled upon leaving the workplace.   The four incidents combined painted a reasonable (if not compelling) inference that Petitioner was increasingly unhappy with the employees and the workplace, defensive and abrupt. These inferences established a motive for Petitioner's attack, a relevant fact.   The Arizona Court of Appeals aptly described the import as follows:

> The testimony showed that Rivera had a negative attitude towards his co-workers and job and that he had been involved in multiple confrontations regarding his work, which he may have perceived as reprimands. This in turn tended to prove that: Rivera had a motive to return to his place of employment and attack former co-workers. Had the attack occurred in a location and on people unconnected to Rivera's employment, we would agree with Rivera that the testimony was only relevant as propensity evidence. But such was not the case here. Instead, the evidence showed that Rivera carried out an attack on the very people and at the very location toward which he had animosity.

(Exhibit P, Mem. Dec. 3/31/11 at 8-9.)   Because these inferences were permissible, any impermissible inference (e.g. that Petitioner had a propensity to violence, etc.) was irrelevant.

Moreover, to the extent that Petitioner relies upon an assertion that the evidence was unduly prejudicial because it permitted an inference of guilt from a prior bad act or propensity, Petitioner fails to show clearly established Supreme Court law finding such evidence to be a violation of due process. Therefore, even if Petitioner could establish such a constitutional violation, *e.g.* under Ninth Circuit precedent, he would not be entitled to relief under 28 U.S.C. § 2254(d)(1).

Accordingly, because Petitioner fails to establish the absence of a permissible inference from the evidence, and fails to show a constitutionally impermissible inference cognizable under 28 U.S.C. § 2254(d)(1), his Ground One is without merit.

## C.   MERITS GROUND 2(B) (NO LIMITING INSTRUCTION)
### 1.   Parties Arguments

In his Ground 2(b), Petitioner argues that the lack of a limiting instruction on the use his un-*Mirandized* statements violated his rights under the 5th, 6th and 14th

Amendments.   Petitioner argues that such statements could only be used for impeachment, and not substantive evidence of guilt.  (Petition, Doc. 1 at 7.)

Respondents argue that Petitioner has failed to argue any prejudice from the omission, and that the overwhelming evidence against Petitioner and the limited use of the objectionable statements (which only impeached Petitioner on his chronology) precludes a finding of prejudice.  (Supp. Ans., Doc. 24 at 18-21.)

In his Supplemental Reply, Petitioner argues that the error was not harmless because the jury was permitted to view the video of the interrogation during deliberations.  (Supp. Reply, Doc. 25 at 12-13.)

## 2.   **Factual Background**

After being arrested, Petitioner was interviewed and made several statements to the police, but was not provided *Miranda* warnings. (Exhibit K, R.T. 5/27/09 at 16.)

As a result, at trial, the State did not offer any of Petitioner's statements during its case-in-chief.   Petitioner thereafter testified in his own defense, and offered an extremely detailed chronological account of his whereabouts on the day of the shooting. (Exhibit J, R.T. 5/26/09 at 35-50.) The State subsequently presented rebuttal impeachment testimony reflecting that, when Petitioner spoke to police during his police interview, he had been vague regarding his activities on the day of the shooting, and offered none of the particularity that he had during his trial testimony.  (Exhibit K, R.T. 5/27/09 at 7-11.) Defense counsel did not object to the limited evidence (but did object when it appeared to go beyond the point), nor request a limiting instruction, and the trial court did not thereafter *sua sponte* issue a limiting instruction on the use of the evidence.  (*Id.*)

## 3.   **State Court Decision**

In disposing of this claim, the Arizona Court of Appeals adopted the decision and

reasoning of the PCR court.  (Exhibit LL, Mem.Dec. 4/22/14.)  The PCR court disposed of this claim by ruling:

> The error brought to the attention of the court by advisory counsel Mr. Dew wherein the court at the trial did not give a limiting instruction regarding his pre-Miranda statements (to advise the jury defendant's statements were admitted solely for impeachment and not as substantive evidence and to only make such limited use of this evidence) also does not justify relief for defendant. Where no such request for the instruction is made, the court's failure to do so is judged solely under a fundamental error analysis, even if considered plain error under the cases. This court holds that the statements given pre-Miranda (chronology of the day of the shooting) were neither critical to the prosecution nor extremely damaging to defendant.

(Exhibit HH, M.E. 12/24/12 at 2.)

Respondents argue that the state court's finding of no fundamental error is a merits determination entitled to deference under 28 U.S.C. § 2254(d)(1) and a factual determination entitled to deference under 28 U.S.C. § 2254(d)(2) and (e)(1).  (Supp. Ans., Doc. 24 at 19 and n. 5.)

## 4.    Limiting Instructions on Un-Mirandized Statements

In *Miranda v. Arizona*, 384 U.S. 436 (1966), the Supreme Court held that uncounseled statements made by a suspect in response to custodial interrogation made without benefit of a warning of various constitutional rights are not admissible for purposes of establishing the suspect's guilt.   However, the exclusion does not preclude the use of such statements for purposes of impeachment.  "The shield provided by Miranda cannot be perverted into a license to use perjury by way of a defense, free from the risk of confrontation with prior inconsistent utterances." *Harris v. New York*, 401 U.S. 222, 226 (1971).[2]   Thus, where a defendant has testified in his own defense, statements made in violation of *Miranda* may be admitted so long as they are considered for impeachment purposes and not evidence of guilt. *Id.*

---

[2]  Although application of the exclusionary rule applicable to Fourth Amendment violations is generally precluded from habeas review under *Stone v. Powell,* 428 US. 465 (1976), the same is not true of the exclusionary rule applicable to violations of *Miranda* warnings.  *See Withrow v. Williams*, 507 U.S. 680 (1993).

34

Generally, that requires a limiting instruction by the court on the permissible use of the uncounseled statements.  *Id.*

Here, of course, no such instruction was given.  That was constitutional error.

However, not every constitutional error justifies relief.  Rather, on habeas review (except in limited situations not applicable here[3]) "petitioners…are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.'"  *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).  Thus, the habeas court must ascertain whether the error "had substantial and injurious effect or influence in determining the jury's verdict."  *Id.*  This standard is more favorable to sustaining the conviction than that applied on direct review.  *Id.*

> As the Supreme Court has explained, under the Brecht standard, we ask, "Do I, the judge, think that the error substantially influenced the jury's decision." In a case where the record is so evenly balanced that a "conscientious judge is in grave doubt as to the harmlessness of an error," the petitioner must prevail. Thus, in the course of a *Brecht* inquiry, the state bears the "risk of doubt."

*Gautt v. Lewis*, 489 F.3d 993, 1016 (9th Cir. 2007).

Moreover, "federal district courts always should apply the *Brecht* standard when conducting their own independent harmless error review, regardless of what, if any, type of harmless error review was conducted by the state courts."  *Bains v. Cambra*, 204 F.3d 964, 977 (9th Cir. 2000).   Nonetheless, even if the habeas court would conclude the error harmful under *Brecht*, a state court's finding of harmlessness must be afforded deference under 28 U.S.C. § 2254(d).  *See Medina v. Hornung,* 386 F.3d 872, 878 (9th Cir. 2004).

---

[3]  Some constitutional errors are deemed "structural" and thus mandate automatic reversal.  This has been applied in very limited circumstances such as complete denial of counsel, biased trial judge, racial discrimination in selection of grand jury, denial of self representation at trial, denial of public trial, and a defective reasonable doubt instruction. *Neder v. United States*, 527 U.S. 1, 8 (1999).   The *Brecht* Court also recognized a very limited, hybrid type of trial error involving "a deliberate and especially egregious error of the trial type, or one that is so combined with a pattern of prosecutorial misconduct" as to "infect the integrity of the proceedings" and "warrant the grant of habeas relief even if it did not substantially affect the jury's verdict."  *Brecht*, 507 U.S. at 638, n. 9. None of these apply to the *Miranda* instructional error alleged by Petitioner.

Here, the undersigned finds that the admission of the uncounseled statements, even without benefit of a limiting instruction, did not substantially influence the jury's decision.  The undersigned reaches this conclusion for three reasons.

First, the uncounseled statements proffered no direct evidence or admission of Petitioner's guilt.  They were merely impeaching of Petitioner's exculpating description of his activities.

Second, the uncounseled statements were impeaching only to the extent that the statements to police were devoid of the details offered by Petitioner in his expansive description at trial.

Third, the direct evidence of Petitioner's guilt was substantial, if not overwhelming.  The victim, Steven P., testified that upon being shot, he turned and saw the shooter who he immediately recognized as Petitioner.  (Exhibit D, R.T. 5/13/09 at 85-86; 122.)  Similarly, the other victim, Robert, testified that after being shot he took cover under a vehicle and saw the shooter running away, carrying the rifle with red tape holding an extra clip that he had previously seen on several occasions in Petitioner's car, and he recognized the shooter as Petitioner.  (Exhibit E, R.T. 5/19/09 at 11, 16-18.)  A subsequent investigation revealed that a shoe print found at the scene matched the type of shoe Petitioner was wearing. (Exhibit H, R.T. 5/21/09 at 8–10.) Shortly after the shooting, Petitioner appeared at his step-father's home.  Although at trial, the step-father denied anything unusual about that visit, when interviewed at the time he told police Petitioner had acted strangely, washing his hands and face in vinegar.  Petitioner then asked his step–father for an extra pair of shoes, but when told that there were none, Petitioner asked for a knife and cut the soles from the bottom of his shoes. As Petitioner left, his step–father noticed a box in Petitioner's car that he believed might contain a weapon. (Exhibit F, R.T. 5/20/09 at 36-40, 69-73.)   During the search of Petitioner's home, officers discovered: (1) an April 29, 2006 receipt reflecting a purchase of a 7.62 by .39 W.A.S.R – 10 assault rifle; (2) an empty box of 7.62 by .39 millimeter shells, which were the type of shells found at the scene; and (3) a spent 7.62 by .39 shell casing,

which matched the type of shell that was found at the scene. (Exhibit G, R.T. 5/21/09 at 16-20, 48-51; Exhibit H, R.T. 5/21/09 at 42-48.) The State's expert testified that the casing found in Petitioner's home and the one found at the scene were fired from the same weapon or another one just like it. (Exhibit H, R.T. 5/21/09 at 48.)

Thus, the prosecution presented substantial, credible evidence of motive, identification of Petitioner at the time of the shootings by two witnesses very familiar with him, inculpating behavior afterwards, and evidence of Petitioner's purchase and possession of a weapon uniquely matching the one used at the shootings.

Petitioner's defense consisted of his alibi testimony, and the corroboration from his wife. Petitioner presented testimony from his wife that he was in their apartment until after 7:30 (the time of the shooting), that he regularly cut the soles off worn out shoes and washed with vinegar, and that he had sold his rifle before the shooting. (Exhibit I, R.T. 5/26/09 at 16-19, 27-28.) However, she previously told police he had left between 6:30 and 7:00, earlier enough to be at the scene at the time of the shooting, and she had not told police about the sale of the rifle. (*Id.* at 45-51; Exhibit J, R.T. 5/26/09 at 136-137.)

Petitioner argues that the impact of the violation was worsened by the fact that the jury was permitted to review the video of his jailhouse interrogation during deliberations. (Supp. Reply, Doc. 25 at 12-13.) Petitioner fails to establish that the video was viewed during deliberations. None of the record reflects that it was viewed during deliberations. At most, the record reflects that during the testimony of the interviewing officer, approximately five minutes of the video was played. Only the beginning portions the five minutes played are recorded in the transcript. (Exhibit K, R.T. 5/27/09 at 10-11.) Petitioner fails to explain the harm of viewing the video. Petitioner proffers nothing to suggest that the video extended beyond the description provided by the testimony of the interviewing officer, or that it somehow was more incriminating than the mere description. Given the limited nature of the statements reflected by the testimony of the witness, there appears no reason to believe that viewing the actual video altered the

1    limited effect of the testimony about the uncounseled statements.

2         Under all these circumstances, the undersigned concludes that the addition of the

3    limited impeachment of Petitioner's alibi testimony by the uncounseled statements

4    would not have substantially impacted the jury's verdict.   Accordingly, the error in

5    admitting the uncounseled statements without a limiting instruction was harmless.

6         In the course of arguing prejudice, Petitioner argues that the failure to give a

7    limiting instruction had the effect of altering the prosecutions' burden of proof.  (Supp.

8    Brief, Doc. 1 at 8-9.)   Petitioner fails to explain how this was so.   In support of his

9    argument he cites *Cage v. Louisiana*, 498 U.S. 39 (1990), and *Ho v. Carey*, 332 F.3d 587

10   (9th Cir. 2003).   *Cage* simply stands for the proposition that the jury must be properly

11   instructed on the standard of proof "beyond a reasonable doubt," and *Ho* simply applied

12   that principle where a jury instruction on its face omitted an element of the offense.

13   Petitioner proffers nothing to suggest that the jury in his case was not properly instructed

14   on the burden of proof or the elements of the offense.   He simply complains that there

15   was a risk that his uncounseled statements were put to a purpose other than impeachment

16   without benefit of a limiting instruction.   There is no reason to believe that the absence

17   of such an instruction left the jury to believe that they could convict without proof

18   beyond a reasonable doubt.

19        Because the undersigned concludes that the error was harmless, there is no need

20   to evaluate whether the state court reached the merits of the claim, nor whether the

21   court's decision was an unreasonable determination of the facts or contrary to or an

22   unreasonable application of Supreme Court law.

23        Therefore, Ground 2(b) is without merit and must be denied.

24

25   **D.   SUMMARY**

26        Ground 1 (unfairly prejudicial evidence) and Ground 2(b) (no limiting instruction)

27   are without merit and must be denied.   The remainder of Petitioner's claims are

28   procedurally defaulted or were procedurally barred on independent and adequate state

grounds, and must be dismissed with prejudice.

## IV.    CERTIFICATE OF APPEALABILITY

**Ruling Required** - Rule 11(a), Rules Governing Section 2254 Cases, requires that in habeas cases the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Such certificates are required in cases concerning detention arising "out of process issued by a State court", or in a proceeding under 28 U.S.C. § 2255 attacking a federal criminal judgment or sentence. 28 U.S.C. § 2253(c)(1).

Here, the Petition is brought pursuant to 28 U.S.C. § 2254, and challenges detention pursuant to a State court judgment. The recommendations if accepted will result in Petitioner's Petition being resolved adversely to Petitioner. Accordingly, a decision on a certificate of appealability is required.

**Applicable Standards** - The standard for issuing a certificate of appealability ("COA") is whether the applicant has "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

**Standard Not Met** - Assuming the recommendations herein are followed in the district court's judgment, that decision will be in part on procedural grounds, and in part on the merits. Under the reasoning set forth herein, jurists of reason would not find it

debatable whether the district court was correct in its procedural ruling, and jurists of reason would not find the district court's assessment of the constitutional claims debatable or wrong.

Accordingly, to the extent that the Court adopts this Report & Recommendation as to the Petition, a certificate of appealability should be denied.

## V.     RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that Ground 1 (unfairly prejudicial evidence) and Ground 2(b) (no limiting instruction) of Petitioner's Petition for Writ of Habeas Corpus, filed April 1, 2015 (Doc. 1) be **DENIED**.

**IT IS FURTHER RECOMMENDED** that the remainder of Petitioner's Petition for Writ of Habeas Corpus, filed April 1, 2015 (Doc. 1) be **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that, to the extent the foregoing findings and recommendations are adopted in the District Court's order, a Certificate of Appealability be **DENIED**.

## VI.    EFFECT OF RECOMMENDATION

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to *Rule 4(a)(1), Federal Rules of Appellate Procedure*, should not be filed until entry of the district court's judgment.

However, pursuant to *Rule 72(b), Federal Rules of Civil Procedure,* the parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See also* Rule 8(b), Rules Governing Section 2254 Proceedings. Thereafter, the parties have fourteen (14) days within which to file a response to the objections. Failure to timely file objections to any findings or recommendations of the Magistrate Judge will be considered a waiver of a party's right to *de novo* consideration of the issues, *see United States v. Reyna-Tapia*,

328 F.3d 1114, 1121 (9th Cir. 2003)(*en banc*),  and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the recommendation of the Magistrate Judge, *Robbins v. Carey*, 481 F.3d 1143, 1146-47 (9th Cir. 2007).

Dated: March 2, 2016

15-0586r RR 15 11 18 on HC.docx

_____
James F. Metcalf
United States Magistrate Judge